The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good afternoon, everyone. We're here on case number 4220537. That's in the interest of J.M. A minor. For the appellant, we have Mr. Peter Joseph Lynch. Is that correct? Yes, Your Honor. And appearing for the appellee, Pamela Wells. Is that correct? Yes, Your Honor. Thank you. Mr. Lynch, you may proceed with your argument. Thank you, Judge. May it please the Court, Ms. Wells. Again, my name is Peter Lynch. I represent the G.A.L. Brian Lutz. And I suppose directly from that, the best interest of the minor child, which I believe is Mr. Lutz's charge. We are asking the court to reverse the trial court based on a twofold argument that the court has made reversible error. First, in denying the G.A.L.'s petition to establish the nonexistence of the parent-child relationship. And second, when the court made reversible error when it found that there was intent to consent to assisted reproduction. The order I'm referring to is C-234-235. It's a May 24th, 2022 order denying my client's petition. Again, first, it's our petition on the first point that the G.A.L.'s petition should have been granted. And created the nonexistence of a parent-child relationship between this minor child and what was at the time a putative parent named Skylar Minders. Under Section 102 of the Illinois Parentage Act, these parties are children essentially are limited to two parents. And throughout the fact pattern of this case, it became clear that this minor child had two parents. Those parties are Jessa Raley, the child's biological mother. And certainly, I don't believe there's anybody raising any issue that she is the mother of the minor child. And second, Mr. Michael Simmons, who it was through DNA testing determined to be the biological father of the child. And an order was entered on January 19th of 2022 naming him the biological and legal father of the child. Did the court make that finding? Go ahead, Justice Kavanaugh. I was just asking in memorializing that order, did the court make that finding? Yes, Judge, and I can make a reference to you in the record if you like on page C-181. I can get there to you. I believe it's on a separate standalone order that says Michael Simmons is found to be the biological legal father of the minor on the basis of DNA testing. I believe it says. It's the exact verbiage. What about the court's order? Does the court order refer to him as a biological father or as a donor? It refers to him as the biological and legal father. Very well. And then, counsel, I was going to ask, though, however, with regard to and focus a little bit on your comment regarding two parents. First, there isn't any dispute, is there, in this case, that the minor was conceived through artificial insemination? That testimony does seem to be unrebutted on the record. Yes. Okay. And so Article 7 seems to govern of the parent. The Article 7 of the Parentage Act really governs the issue of parentage in this case. Isn't that correct? Well, I would say if we believe to be that there was assisted reproduction and misminders would be defined as an intended parent, which would go to my second argument. Well, but I mean, I think the only testimony in the record is the proffer that the trial court had in front of it and the proffer, the gist of the proffer, which was accepted without objection by all parties during the course of the hearing on the JAL's petition, was that Skyler was legally married to Jessa, the biological mother, and that they decided they wanted to have a child. This is from the record, pages 107, 108, that I'm reading. Thank you. And in deciding they wanted to have a child, they got in contact with a friend, Mark S., who came to their residence, who provided a sample of his semen in a cup that was gathered by Skyler and taken into a separate room where Skyler implanted it in Jessa to conceive a child. There was no sex between Jessa R. and Mark S. There was no intention between any of the three parties that Mark R. was to be a parent. All intention at that point in time between this legally married couple was that they would conceive a child together. So, because of that evidence, the trial court was led to, and therefore we, a focus on Article 7. Thank you. That leads me to the second point, and I certainly can take those in that order, which is, I think at that point, the definition of an intended parent, as the court noted, is a person who enters into an assisted reproductive arrangement, under which he or she will be the legal parent. And I guess my question would be a further examination of that arrangement, which is that there was no written agreement between the parties and the father, which is not mandatory, but would certainly clarify things. And that's 703A. Right. Mr. Simmons was not an anonymous donor, which I believe is also 703B. Thank you. The intended parent at any time could seek a court order to sort of codify that relationship, which in this case was never done. Right. The word is may. The operative word is may. It doesn't say shall. I agree, but I would go back a couple of... Well, before you go back, I think we need to look at D. Do we not? Yes. Okay. And D says, if the requirements of subsection A of this section are not met, or B, or subsection B is found by a court to be inapplicable, so that's true here, a court of competent jurisdiction shall determine parentage based on evidence of the party's intent at the time of donation. That's the operative time, is it not? I do agree. Yes. Okay. So the evidence the trial court looked to was the evidence in the record that I just referred to earlier. Is that correct? I do believe that is correct, Judge, but I don't think that tells the entire story. And I think the unrebetted proffer is what it is, right? So I'm kind of stepping back and looking at this from the perspective of those other points we made that there's no written agreement. Mr. Simmons is not an anonymous donor. So, if we go back in the record, when Mr. Simmons is first named as a potential father, Judge Gillis's question, trial court's question was, speaking of legality, who is the biological father? And Janessa Riley says it's this man. We go through the DNA process. It's a kind of a protracted litigation process, but the rules show causal. And nobody objects. Nobody has a problem with Mr. Simmons being named biological and legal father at that time. Back on a January 19, 2022 order, he's named the father without objection. Nobody appeals that order, even though once his status is made clear as father, that makes it an appealable order in our mind under the Armani case. Wait a minute. I'm going to just pause right there. Don't lose your train of thought. But this was the 3rd District back then. We don't know that the 3rd District followed Armani. That's a 1st District case. So it's possible that the case law at that point, and there may have been a conflict in the case law, that it was appealable at that time. I guess my point is largely the same, that nobody even challenges it until the GAL files his petition to disestablish or to create the non-existence. But part of what I'm suggesting is at that moment, when the first question of legality of parentage is raised, Ms. Minder says, I've done my research. I'm her parent, or I'm the child's parent because of marriage. Well, assuming that that research has been done, there was an opportunity to create an order that names her as parent. That opportunity passed for 11 months without ever taking advantage of that. So then we go back, I suppose, to the question of what's the intent at the time of donation. And I do think that's very difficult to determine, certainly from father's perspective, where there is no testimony really about what his perspective was. So when I examine his actions from the moment he's involved in the case, which is he shows up, he does not object. He does not say I was a donor. He submits to DNA testing. Given the opportunity to object being named a legal father, he doesn't. So I wonder if his actions, and my thought is that to extrapolate what he does. Now, he eventually surrenders without any indication as to why. But his actions after that... Why would why be relevant? I mean... It's not. I don't think it is. It was his motion with counsel there to surrender his parental rights. I guess my point more, Judge, is to say he doesn't come in and say, I was never supposed to be a dad in this case. Given the opportunity to say those things, he never does. And he makes himself a party to this case, makes himself a legal father. And that's when we're back to that moment. When we have two parents, and Ms. Minder, who was a putative parent at that time, I think under the laws in the Parentage Act is boxed out. That's our perspective. And I think if you go back into even her own intentions, that the agency, DCFS, believes that she was only married, Jessa Railey, to conceal Ms. Minder from DCFS involvement because Ms. Railey had a previous finding of unfitness. Ultimately, they're divorced soon after. There's no pleading to name her as legal parent. There's, again, no objection to Mr. Simmons. And then there's a reference by her counselor that she was planning on surrendering her parental rights. So I find that the rebutted evidence to the time of donation difficult. I do, from our perspective. But everything that surrounds that after seems to suggest not a long-standing parental relationship for her, Ms. Minder, and that Mr. Simmons did what he could. I'm sorry. You said suggest not a long-standing parental relationship? Well, with the notion that... Not knowing how that's relevant here. Well, I think we're trying to create the understanding at the time of donation from looking backwards to that moment, I guess is what I'm doing. And she's talking to her counselor about surrendering her rights. So I guess it's difficult for me. She doesn't ultimately do that, but difficult for me to also suggest at the time of donation, she's thinking, I intend to be an intended parent and raise this child. Given the limited proper evidence, it's a little difficult for us to unpack that backwards. But that's, I think, part of the analysis. I'm reading my answer, maybe I didn't clear things up. No, I appreciate your answer. But I guess I go back to what the evidence the trial court looked at. And we need to determine, at least at this point, is whether the evidence or the trial court's decision was against the manifest way to the evidence at this point. And the evidence the trial court had before it was what I had alluded to earlier. I think complete with that, though, Judge, is the evidence that Mr. Simmons was named biological and legal father. And I don't know that the analysis that goes beyond that under Article 7, which came up a year or so, maybe more, 13 months after he was named biological parent. If Ms. Minder still should have had a seat at the table at that point. I'm sorry, say that again. Whether or not at that point, Ms. Minder still would have had a seat at the table because the child had two biological legal parents. Well, not if the issue of parentage is governed by Article 7. So, the legislature specifically provided, did it not, that a donor is not a parent, just to avoid the problem you posed. Now, I can't deny that the order is in the record. It's there. But, on the other hand, we have the situation of artificial insemination. And so, it seems to me it's hard to disregard that section of the statute in analyzing this case. Well, I guess I wouldn't suggest we entirely disregard it, but I think it has to be read in conjunction with father's actions where he shows up and becomes a legal father. And then surrenders his parental rights? For reasons unknown. Well, we can't. The trial court didn't know, and we can't know. But, I guess what I'm saying, too, is his multiple appearances in court with the opportunity to object to be naming legal father is asked directly by the court. Do you object to be naming legal father? His attorney says no. That's your moment to suggest, no, I'm just a donor. I don't belong here. And there's no evidence of that, that opportunity was never used. Right, but Schuyler's attorney objected. At pages 67 and 68 of the record. At that time, attorney Floyd Daly said, but for my client, I would object to the determination of paternity being entered in as much as it then would have a prejudicial effect on my client remaining in the case, and it kind of becoming ipso facto a declaration of non-existence of a parent. So, there's an objection there. Certainly, but that's exactly what that, having heard that objection, the court still makes a biological legal father, thereby fulfilling Mr. Daly's fears. That created that existence of non-parenthood because a child can only have two parents. Thank you. I would think at this point, frankly, judges that we've probably covered most of my two arguments. If there's any other questions I'd be happy to feel those as well. Give me a minute, let me take a look and see I agree. I think we've covered an awful lot here but give me one if I do the same. Okay, no problem. If I may just proceed on one point. Please. The judge's order also suggests that the application by the GL would throw into question every donor or every donor parent relationship and I think that's a bridge too far from where I'm sitting in order today, suggesting to us a written order, seeking out an order may crystallize the best way in the best manner in which a donor parent should proceed in order to establish their legal standing as a parent. I don't think it calls into question all these other relationships, except it may provide guidance to those who are seeking that relationship. Go get yourself an order. If this is the evidence that you were intended this donor relationship. Go solidify it go finalize it. That's what the statute suggests you do. says may, but that would the proper procedure and in order to avoid further scrutiny that kind of locks that in, I just Sorry to interrupt. Sorry. I think that that does kind of Okay. Just as you know, if any further questions. I don't have any at this time. Justice Kavanaugh. No, not this time. Before you proceed them as well I just want to say that I'm having some internet problems, and I'm my screen, my screen isn't freezing but everybody else's isn't I missed just a few of your last comments, Mr. Lynch. I don't think I need to ask you to repeat them right now but I'm just going to ask our bailiff to keep his eye on how this is proceeding. And if it freezes out again I'll probably have to interrupt you, Miss Wells I'll try not to. I don't think at this point I have any real concerns about where we are in the argument but I just wanted to identify that problem and hopefully it doesn't occur again. Now as well as you may proceed with your argument I'm sorry for the delay. No, not a problem at all. The technology is always an issue for us, isn't it. So, Your Honor's counsel, may it please the court. The people are actually of the same position that the jail is in this case that the trial court did air. And the reason for that position is based on a, the cases that we cited in our brief and john. There are ways to which you can become a parent, and we do agree that the legislature has indicated only two parents and we cited that in our brief. You don't because the as well. I apologize, I'm going to interrupt you. Going to ask I think a preliminary and important question for in my mind, and that is what role of the state in this proceeding on this petition. Does the state have any standing. We are a party that has to serve the parents and once a parent is established, we do have that that position. Now, the state cannot make a motion to establish parentage, but it is our position that once that motion is made, we are a party to the proceeding and we would have a position on that. Well, what is your authority for that I understand certainly the role in the juvenile proceeding and that this petition was brought during the course of the juvenile proceeding, but, and you indicated that the state can't bring the petition to determine issue of parentage is determined so that the juvenile court proceeding may go ahead. But what interest does the state have in this particular petition to establish the non relationship. Once the petition was filed the trial court allowed the state and actually invited the state to participate in all the proceedings. What, so we were a party below on this exact petition, and we are continuing our representation at the appellate level, because we were a party below on this actual hearing with the actual issues before the court. Okay. Well, to follow up as well. Go ahead. I identified you a few moments ago as counsel for the appellee is that sort of a misidentification. It's one of those situations that I think the standard appellant appellee. Names don't necessarily apply we are a party to the proceeding we were not the appellant. So I don't know what other identifier to to give us other than appellee, but we are certainly not a party that is the subject of the order right issue, or the, or the subject that would normally be determined to be an appellee. So we'll just say you represent the state. Is that accurate. I do represent the state. Your honor. That is absolutely accurate. I represent the people of the state of Illinois, who were represented by the state's attorney's office in the, in the trial court below. Yes, the neither. Neither. Mark, as who's parent rights have been terminated. Jessa are or Schuyler. I know there was some delay and getting them notified they were given an opportunity to file briefs. None of them have entered appearances or filed briefs in this case to be clear. So, getting back to, to my argument, now that we have cleared up, clear that up. While we do believe that assisted reproduction is at issue here. It is only a part of the greater parentage act. And once the trial court determined that Mark s was the legal father that took him out of the position of donor. Because a donor is not a legal parent. And so we absolutely understand justice enough questions to attorney Lynch, but the trial court would have been better serve to determine the parentage of. Mr. Simmons and miss Jessa are at the same time, so he could determine that donor status that did not happen. He determined prior to the hearing and the motion to disallow the parent child relationship. He made a finding that mark that the biological father was also the legal father, thus, not a donor. So, while your honor, just as you know, go ahead. He didn't determine he was not a donor. By finding that he was the legal father. And a donor cannot be a legal parent. That was the ipso facto finding of that. That ruling is what is what I'm trying to convey. But he reversed himself, did he not in in his decision with regard to this petition? Because he said. He believed that indeed, article 7 applied here and was specific about why it applied. So, a trial court certainly in a position to be able to reverse himself. He did not actually ever make a finding that mark. S was not a legal father. He did not reverse that order. He had already taken a surrender of parental rights, which is a, you can't surrender parental rights if you don't have them. So he had already taken those steps in relationship to mark. And I call him Marcus. That's my recollection of his name. I know council referred to him as Michael. We're talking about the same man. If I have his name wrong, I certainly apologize for that. But the court did not actually ever make a finding that it's order from January was incorrect. It didn't make a reversal of that order. It didn't make any finding in in relation to the surrenders. It made a completely separate finding on a motion to disallow the parent child relationship after it had already made a finding. That Marcus was the father. So, what we're reviewing is the decision on the petition. Yes, that's what this court is reviewing. Correct. The order, though, when when the court makes a comment about the evidence of what Jess are said, the court also had the evidence in front of it that Marcus was the legal father that it had already made that finding. And so that's why we believe it is an abuse of discretion without saying that order was an error because the court never said that without saying that or was an error. It disregarded a prior finding of the court that what that was based on evidence that it had before it at that time. The only was by Skylar and it made a ruling that it was that he was not that he was the legal father. Would it have been better best practice for the court to hear it all together and we wouldn't have inconsistent orders? Yes, but that's not what the court did here. And he never actually reversed himself. The trial judge never actually reversed themselves. I understand where your thought process is going. Just enough. I just the record doesn't indicate an actual reversal. This is similar to a situation such as John M, where you had a presumptive father through marriage. And the court said, we don't we don't look at we're only establishing paternity at this point. And so you don't look at the best interest of the child and you don't look at all of those other policy decisions. And it wasn't an assisted reproduction case. That was it. It was not it was not an assisted reproduction case, but assisted reproduction I go back to is only a sub part of the parentage act. And if you already have two legal parents, you don't get to the assisted reproduction. I see. And so that doesn't matter how the child whether the child was born from insemination as opposed to sexual intercourse. If you have two legal parents, it does not matter. And that's what the court determined. I'm sorry, that's what the court determined. The court determined when it entered an order in January of 2022, that the biological father was also the legal father. The court could have delayed its finding said, I want to determine if this is a donor situation. He could have done all of those things and did not do so. And by finding that Mark S was the legal father, took him out of the donor situation. I see, but the court obviously felt differently about that when it looked at the petition, however, and made a different decision with regard to the import of that prior order. And you're saying the court was bound to that prior order couldn't have made the decision that it made. I think that the court's findings were inconsistent. He did not actually overrule or reverse his prior decision. And that's what makes this an abuse of discretion because he had a legal ruling that there was a legal father. A donor cannot be a legal father. And so by then ruling based on this proffer that everybody's intent was that it was a donor situation. He disregarded that prior evidence and that prior ruling. Well, disregarded he's entitled to give way to a different way to the evidence in the record. Does he not at various times? Well, this is a this is a judicial determination of somebody being a legal parent. That's why we believe that it's that it is a an abuse of discretion. Well, counsel, you seem to be arguing the court should have completely disregarded the proffer, which was undisputed and unrefuted. How can that be right? I don't think the court should have disregarded it. I think it's one piece of evidence and the order that that the same court had entered carries a lot of weight since it's a legal determination. Well, what what is the standard of review here? The standard of review is Jenova, your honor. And so you're talking about abuse of discretion. I'm sorry. I did misspeak when I said when I when I referred to abuse of discretion. Yes, it is a Jenova standard. And that is because that's because the court is a certain mean clear and unambiguous language that is written without exception. You're doing a statutory interpretation of the parentage act. And that is we I refer to the court to paragraph 21 of a 2015, Illinois, 118605. So that's why we believe it is a Jenova review. Thank you. And if there aren't any other questions, I think I have covered the the the areas of the law as as we've included in our brief. And if there are any other questions, I'd be happy to take them. Council, I don't see any other questions. Thank you for your argument. Is there any rebuttal? I don't know. But anything that she said, but we'll allow you five more minutes anyway, because I think that's what you signed up for. Just I have nothing else to add or but only to clarify the record that in the event, and I believe I did say, Michael, it is Mark S. And I appreciate the clarification from this Wells. Referring to the father is Mark S. That is the party's name. I have it. Anybody hear me? I had you frozen there for a minute. Just turn over. Now you're back. It's great to be back. My screen says I'm having troubles. Can everybody hear me? Yes, Your Honor. Yes. Okay. The last thing that you said, Mr. Lynch, I did not hear. I was just nothing of substance to rebut only that clarifying for the record. I think I referred to the father is Michael S. As well as correct me. It is Mark. Yes. So anytime I said, Michael, it should have been Mark. Okay. Mike S. And Marcus are the same people then. Right. That's correct. Okay. This is kind of unique and really only have one side presenting argument here. Right. But it does happen. I asked Justice Cavanaugh, Justice Zenoff. Do you have any other questions? I don't. Okay. Okay. And just as you know, I see you shaking your head. No. I guess, Mr. Lynch, you completed your arguments and Ms. Wells, you completed yours. So we appreciate them. And the court will take this matter under advisement. We'll consider the case submitted and we will now stand in recess.